ALBERS BROS. MILLING CO. v. ACME MILLS CO.

(Circuit Court, D. Oregon. July 19, 1909.)

No. 3,291.

TRADE-MARKS AND TRADE-NAMES (§ 21*)—WORDS SUBJECT TO APPROPRIATION
—PREVIOUS USE IN DESCRIPTIVE SENSE.

The word "cream," where not previously used in that connection, may be appropriately adopted by a manufacturer as a trade-mark for a superior brand of rolled oats made by him; but its prior use by other manufacturers generally as a descriptive term to denote the first quality, either alone or in combination in the term "extra cream,". in which sense it had come to be understood in the trade, would preclude its exclusive appropriation as a trade-mark by any one manufacturer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § .24; Dec. Dig. § 21.*

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.]

In Equity. On motion for preliminary injunction.

Complainant seeks by this suit to enjoin the defendant from using the word "cream" to designate the defendant's product of rolled oats, which it has put upon the market in competition with complainant's trade in the same commodity. From the bill of complaint, it appears that the Albers & Schneider Company, a corporation, heretofore began the manufacture, in Portland, Or., of rolled oats from specially selected stock, to which product, or "brand," as it is termed, the said company, in about November, 1897, applied the name "cream" as a trade-mark, thus designating the same as "Cream Rolled Oats." It then further appears: That the company continued from that time to manufacture a superior quality of rolled oats, to which it always applied the designation "cream" as a trade-mark; that, in the course of time, its product became favorably known in the markets, and was extensively dealt in and used by merchants and consumers throughout the Pacific Coast States and in British Columbia; that said company continued in the exclusive. use of said trade-mark "cream" to designate the said particular and superior brand of rolled oats, placing the same upon all sacks, bags, boxes, and other containers of the product put upon the market, until about January, 1903, when it disposed of its entire business, including the good will thereof, and especially the trade-mark "cream," whereby its special brand of rolled oats was designated and distinguished as the product and commodity of said company solely, to the complainant herein; that complainant has from that time continued the production of rolled oats from specially selected stock, thus producing a superior quality or brand of the commodity, to which it has always attached the trade-mark "cream"; that such product, so designated, has continued to be extensively dealt in upon the markets, and used by consumers throughout the said Pacific Coast States and British Columbia, up to the present time; that by virtue of the large, extensive. and universal use of the said trade-mark within the territory named, in connection with the special product or brand of complainant's rolled oats, it has come to specially designate and distinguish complainant's product from other products of rolled oats; that dealers and consumers purchase the commodity so designated as and for a superior quality of rolled oats manufactured by complainant; that, upon proper application of complainant, its said trade-mark "cream," as used in designating its special product, was admitted to registration in the United States Patent Office, and a certificate of such registration was, accordingly, issued to complainant on December 17, 1907.

Following this, it is further shown, in effect: That defendant is manufacturing an inferior quality of rolled oats; that to the boxes, bags, and pack-

ages containing the same it is attaching complainant's trade-mark "cream," and, thus designated, it is placing such inferior product upon the market in the Pacific Coast States and British Columbia, not only in competition with complainant's superior product, but for the purpose of deceiving the public and inducing dealers and consumers to believe that defendant's said product is the commodity of rolled oats manufactured by complainant, by which practice it has greatly injured, and is continuing so to injure and impair, the trade and business of complainant. The prayer is for a temporary restraining order, to be followed, after full hearing, by a perpetual injunction enjoining and restraining defendant from offering for sale, or selling, rolled oats put up in bags, sacks, or other containers inscribed, in imitation of complainant's said trade-mark, "cream," or from advertising itself as being the lawful producer of a brand of rolled oats under the designation or trade-mark "cream."

To this bill the defendant has interposed a demurrer, challenging its sufficiency upon which to base the relief prayed. In support of the bill for a provisional injunction, the complainant has filed several affidavits. These are controverted by numerous affidavits filed by the defendant. A hearing was had upon both the demurrer and the application for a preliminary injunction at the same time, and the cause was thus submitted.

T. J. Geisler and Chas. J. Schnabel, for complainant.
Teal & Minor and A. B. Winfree, for defendant.

WOLVERTON, District Judge (after stating the facts as above). I am impressed that the bill of complaint states a cause of suit for injunctive relief restraining the defendant from the use of the word "cream" as a trade-mark to designate its product in the market. The word as employed by complainant to designate its product, used in connection with the corporate name of the concern, is appropriate for adoption as a trade-mark. It is not in any particular or peculiar sense descriptive of the article produced; nor would it seem that it was indicative of quality, grade, or class. In general use, the word is not employed adjectively or in a qualifying sense, but denotes in one of its significations the best of a particular thing. So that it would appear from the bill that the complainant's use of the word was arbitrary, and designed and intended to denote origin and ownership. In this sense it was susceptible of appropriation as a trade-mark. The complainant having therefore alleged that it was the original, first, and exclusive appropriator of the word "cream" as applied to its product of rolled oats, it was entitled to have it registered as such. See Price Baking-Powder Co. v. Fyfe (C. C.) 45 Fed. 799.

Further than this, the bill shows, in effect: That defendant is putting upon the market an inferior quality of rolled oats, under the designation of "Cream Rolled Oats," in imitation of complainant's trade-mark; that thereby the public is being deceived, and imposed upon, and induced to buy the defendant's inferior product as the complainant's superior and choice grade or brand of rolled oats. Thus does the bill, in legal effect, characterize the dealings of the defendant in the commodity of rolled oats in competition with those of the complainant in the same commodity as unfair; the result being that defendant is passing off its inferior goods upon the market for the product of complainant. In this sense there can scarcely be a doubt that the bill states a cause of suit. The demurrer should therefore be overruled.

Coming to a consideration of the affidavits filed in support of and against the application for a preliminary injunction, quite a different state of facts is disclosed.

Henry Albers, the president of the complainant company, deposes: That the complainant's predecessor adopted the trade-mark comprised of the words "Cream Rolled Oats" about the month of December, 1897, and that it and the complainant have ever since applied such trade-mark to the commodity of rolled oats manufactured by them; that such trade-mark was duly admitted to register December 17, 1907; and that at all times the same was exclusively so used by complainant and its predecessor. Reference is made to particular instances showing that parties had purchased rolled oats of the defendant's manufacture believing the same to be the product of complainant. The deponent then further states: That the commodity of rolled oats had never been placed upon the market within the Pacific Coast States, or sold under the trade-mark "Cream Rolled Oats," until said trade-mark was applied and used by the complainant's predecessor; that the defendant adopted the designation "Cream Rolled Oats" for the first time about October, 1901, and not earlier; that somewhat later defendant discontinued the use of such designation; but that about April, 1906, it adopted another trade-mark in close resemblance to that of complainant, namely, the arrangement of the words "Extra Cream Rolled Oats," and is now using said trade-mark, to the injury of complainant's trade.

On the other hand, Walter Goss, who is the president and general manager of the defendant company, deposes: That the Acme Mills Company has been engaged in the manufacture of rolled oats since the year 1897, which it has marketed in sacks or containers of three different sizes, containing quantities of 9, 45, and 90 pounds, marked and branded with the words "Extra Cream"; that such product has become well and favorably known to the public as "Acme Mills Company Extra Cream Rolled Oats"; that the terms "cream" and "extra cream" are now, and have been for 12 years last past, used by the various manufacturing institutions and mills and dealers in general, and applied in the trade at large, as indicative of and denoting the first quality of rolled oats; that such designations have been applied in buying and selling, ordering, marketing and branding the commodity as handled in the markets, and, by the custom of the trade, are not employed to denote any particular brand or product of rolled oats, nor do they bear any special signification in an arbitrary sense; but that they have come to mean, and do mean, first quality, in a descriptive sense. In support of the statement, certain price lists are produced, as follows:

Yolo Mills, Hinze & Plagemann, of San Francisco, Cal., bearing date May 20, 1899, "Yolo Mills Extra Cream Rolled Oats." R. Palitzsch, of Portland, Or., bearing date August 10, 1900," "Cream Rolled Oats." Capitol Mills, Deming-Palmer Milling Company, San Francisco, Cal., bearing date October 16, 1899, "Capitol Mills Extra Cream Rolled Oats." Mission Mills, Del Monte Milling Company, San Francisco, Cal., April 4, 1903, "Extra Cream Rolled Oats." Portland City Mills & Peerless Pure Food Company, P. Johnson & Co., Portland, Or.,

bearing date November 1, 1901, "Peerless Cream Rolled Oats." Pacific Cereal Association, of San Francisco, Cal., bearing date January 4, 1904, "M. Buyer Rolled Oats Extra Cream." Pacific Milling Company, San Francisco, Cal., bearing date February 15, 1906, "Extra Cream Rolled Oats."

Thereupon the affiant further states that he is familiar with the custom and usage of the mills and trade upon the Pacific Coast, and that the terms "cream" and "extra cream," as applied to the product rolled oats, were used in the trade in general long prior to any use made thereof by Albers Bros. Milling Company, or its predecessor, as a trade-mark or otherwise.

Six other affidavits are produced, all corroborative of the statement of Goss that the terms "cream" and "extra cream" have, by the custom and usage of the trade upon the Pacific Coast, acquired a meaning and signification denoting quality, and nothing beyond in a special sense. By a counter affidavit the complainant shows: That rolled oats was first produced in about the year 1885, and that, as indicative of quality, the words "extra cream," denoting choice or extra grade, were then, and ever since have been, applied to the product in a descriptive sense; that such words were never applied as a trade-mark; and that the word "cream" was not used by itself, or otherwise except in connection with the word "extra."

Upon a consideration of these affidavits pro and con, it is by no means clear that complainant's predecessor was the first to employ the word "cream" in application to the product rolled oats in any sense, and it is very much in doubt whether such predecessor was the first to adopt and use the word as a trade-mark. A trade-mark is acquired by prior and exclusive user, or it may be acquired by registration. The complainant asserts prior user, and then a subsequent registration. User as a trade-mark signifies that the mark shall be affixed, either upon the goods themselves, or upon the boxes or wrappers containing them, or is in some other way physically attached to the goods. It is not sufficient that the word or symbol be employed as a means of advertisement merely. It must be applied as a mark upon the goods or their container. 28 Am. & Eng. Enc. of Law, 351, 352; Battle Creek Sanitarium Co., Limited, v. Fuller, 134 O. G. U. S. Patent Office, 1299.

By defendant's showing, the terms "cream" and "extra cream" have been used as descriptive of the product and as denoting quality—that is, a choice or first-grade article—for 12 years last past, which antedates complainant's first alleged use of the word "cream" as a trade-mark; but it is, however, contended that, while others may have used the term in a descriptive sense or as denoting quality, the complainant and its predecessor were the first and only concerns to use it as a trade-mark, and hence that the complainant has acquired the right to use it in that way.

The manner of the use of these terms "cream" and "extra cream," as shown by Goss, if they have not acquired a secondary meaning in the trade, would indicate that both such terms were used as trade-marks previously to the complainant's alleged use of the word "cream" in that sense. The usual and common way of distributing the product

in the market was in containers of some sort, with the name of the producer marked thereon, and a designation of the contents, and it is quite probable that the word "cream" and the words "extra cream," as the case might be, were used in connection with the designation of such contents. This use would make of such terms technical trade-marks, unless employed in a descriptive sense to denote quality, as the defendant alleges. So that, taking either aspect of the situation you will, the complainant must fail. If the use of the word "cream" was as a term denoting quality, and was so understood and treated in the market and in trade relations prior to the use of the same by complainant as a trade-mark, then it was not adapted for appropriation as a trade-mark. If, on the other hand, it was used in the manner indicated in connection with the producer's name and a designation upon the bags, packages, and containers indicating the contents thereof, then its use was as a trade-mark. This use, antedating, if Goss' assertion be true, the use by complainant, would preclude complainant from adopting the word as a trade-mark. However, whatever may be the real fact as to the manner and priority of use of the word, there is a maze of uncertainty about it, leaving the question in much doubt and dispute. In such a state of the case, a preliminary injunction will not issue.

Nor does it seem to me that counsel's argument touching the significance of the word "extra," when applied to the word "cream," is tenable. They say:

"We submit that there is a difference between the words 'extra cream' and 'cream,' because of the inherent property of the word 'extra' to define grade and quality. The word 'cream' by itself was never used by any one for any purpose prior to the time of its adoption by plaintiff. The association of the word 'cream' with the word 'extra,' and constituting the only use of the latter word for any purpose by anybody prior to its adoption by plaintiff, had a qualifying effect, it imposed a secondary meaning upon the word 'cream.' Take from 'extra cream' the word 'extra,' and its arbitrary character is re-established. No prior use of a word in the secondary sense for the purpose of designating grade or quality can prevent the subsequent use of the word as a trade-mark, unless the word has been used as a trade-mark. The only function of the words 'extra cream' was to convey to the public the idea that the package or container on which they were used contained the choicest part, selected and segregated by the manufacturer from his general stock."

If the combination means the choicest part of a thing, then we have an expression signifying the choicest of the choice or best part of the product, which is tautological, to say the least. If the word "cream" has an arbitrary sense shorn of any secondary meaning it might have acquired in trade usage, the words "extra cream" are doubly arbitrary, and hence would have been more entitled to selection as a trade-mark than the word "cream"; but, as previously shown, it has not been made to appear satisfactorily that the complainant is entitled to the use of the word as a trade-mark, or at least it is so doubtful that the court will not decree a preliminary injunction restraining its use by others. The case made so far is not persuasive that the defendant is engaged in unfair competition with the complainant, however strongly it may be made to appear at the final hearing.

The preliminary injunction will therefore be denied.